## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB COLE and JENNIFER CARNWRIGHT HIBBERT, as parents and natural guardians of Levi Cole, deceased, and as Co-Administrators of the Estate of Levi Cole,<br><br>    Plaintiffs,<br><br>  v.<br><br>BRIAR JENKINS and TROY BOROUGH,<br><br>    Defendants. | No. 4:21-CV-01779<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### JUNE 17, 2022

## I.    BACKGROUND

On January 7, 2022, Plaintiffs Jacob Cole and Jennifer Carnwright Hibbert filed a four-count Amended Complaint against Defendants Briar Jenkins and Troy Borough. Plaintiffs bring negligence claims under Pennsylvania law and constitutional claims through 42 U.S.C. § 1983.

On January 21, 2022, Defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion to dismiss is now ripe for consideration. For the following reasons, it is granted.

Plaintiffs' § 1983 claim against Jenkins and state-law negligence claims are dismissed without leave to amend.  Plaintiffs will only be provided leave to amend their § 1983 claims against Troy Borough.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases

---

[1]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3]  *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]  *Id.* at 327.

[5]  Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[6]  550 U.S. 544 (2007).

[7]  556 U.S. 662 (2009).

[8]  *Id.* at 670.

"retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

---

[9]   *Id.*
[10]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]   *Id.*
[12]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13]   *Twombly*, 550 U.S. at 556.
[14]   *Iqbal*, 556 U.S. at 679.
[15]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

When deciding a motion to dismiss, a Court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[20] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[21]  But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion.  A Court may

---

[16]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[17]  *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[18]  *Id.*
[19]  *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).
[20]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[21]  *See* Fed. R. Civ. P. 12(d).

consider any documents that are integral or explicitly relied upon in the complaint.[22]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[23]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[24]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[25]  In this matter, I find that these conditions have been met, and will consequently consider the parties' attachments.

### B.   Facts Alleged in the Complaint

The facts alleged in the Complaint, which I must accept as true for the purposes of this motion, are as follows.

On September 26, 2020, Levi Cole was riding a motorcycle in Troy Borough, Bradford County, Pennsylvania.[26]  Officer Briar Jenkins saw Cole riding at about fifty-seven miles per hour in a twenty-five-miles-per-hour zone.[27]  So Jenkins activated his police vehicle's warning lights and siren and began pursuing Cole.[28]

---

[22]  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[23]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[24]  *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[25]  *Faulkner*, 463 F.3d at 134.

[26]  Doc. 8 at ¶ 5.

[27]  *Id.* at ¶ 6.

[28]  *Id.* at ¶ 7.

Jenkins pursued Cole through Troy Township and Sylvania Borough to the area of Columbia Township.[29]  Jenkins then pursued Cole further west into Tioga County, continuing on into Roseville Borough.[30]  Eventually, Cole turned onto Kittle Road.[31]

At some point, physical contact occurred between Jenkins's vehicle and Cole's motorcycle.[32]  As a result, Cole lost control of the motorcycle, struck a tree, and died.[33]  His parents, Jacob Cole and Jennifer Carnwright Hibbert, sued.[34]

### C.    Analysis

#### 1.    Municipal Immunity

First, Plaintiffs allege negligence under Pennsylvania law.  But in their brief opposing Defendants' motion to dismiss, Plaintiffs "concede that at the current state of the proceedings in the instant case the state negligence pendant jurisdiction claims are barred by the provisions of 42 Pa.C.S. § 8542(b)(1)."[35]  Because Plaintiffs agree that municipal immunity bars their state-law negligence claims, these claims are dismissed.

---

[29]  *Id.* at ¶ 8.
[30]  *Id.*
[31]  *Id.*
[32]  *Id.*
[33]  *Id.*
[34]  *Id.* at ¶ 1.
[35]  Doc. 14 at 15.

### 2.     Qualified Immunity

Next, Plaintiffs sue Jenkins under 42 U.S.C. § 1983, alleging that he failed to properly operate and control his vehicle, excessively sped, and failed to maintain a proper lookout.  Plaintiffs also allege that Jenkins was deliberately indifferent to and recklessly disregarded Cole's life, safety, and constitutional rights.  Plaintiffs further allege that Jenkins's actions rose to a level of intention to cause harm and were outrageous, egregious, and conscious-shocking.

In response, Jenkins asserts qualified immunity.[36]   "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[37]  A court has the "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[38]

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"[39]  "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of

---

[36]  Doc. 10 at 8–18.
[37]  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[38]  *Id.*
[39]  *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

persuasive authority in the Courts of Appeals.'"[40]   And "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[41]

### a.   Shocks-the-Conscience Test

"[T]he appropriate standard to be applied in police pursuit cases involving an alleged violation of substantive due process is the 'shocks the conscience' test."[42] Here, Jenkins's conduct did not shock the conscience or violate clearly-established law.  Several police-pursuit cases illustrate why.

In *County of Sacramento v. Lewis*, officers "saw a motorcycle approaching at high speed."[43]  "Instead of pulling over in response to [the officers'] warning lights and commands," the motorcycle "sped off."[44]  So the officers "began pursuit at high speed."[45]

---

[40]  *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (quoting *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)).

[41]  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[42]  *Kneipp v. Tedder*, 95 F.3d 1199, 1207 (3d Cir. 1996); *see also Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717–18 (3d Cir. 2018) ("Our case law is clear that this 'shocks the conscience' framework for analysis applies to police-pursuit cases."); *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 480 (3d Cir. 2003) ("We derive from these cases the principle that the 'shocks the conscience' standard should apply in all substantive due process cases if the state actor had to act with urgency. This has been the law for police pursuit cases . . . .").

[43]  523 U.S. 833, 836 (1998).

[44]  *Id.* at 837.

[45]  *Id.*

"The chase ended after the motorcycle tipped over as [its driver] tried a sharp left turn."[46]  "The patrol car skidded into [a motorcycle passenger] at 40 miles an hour, propelling him some 70 feet down the road and inflicting massive injuries."[47] The passenger "was pronounced dead at the scene."[48]

The Supreme Court of the United States found that the officers "had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes."[49] Moreover, the officers did not intend to "induce [the driver's] lawlessness, or to terrorize, cause harm, or kill."[50]  Accordingly, the Supreme Court held that the officers' behavior did "not shock the conscience."[51]

Similarly, in *Davis v. Township of Hillside*, a stolen Acura automobile "sped away with the marked police cars in pursuit . . . ."[52]  "[T]he chase ended when the pursuing police car bumped into the rear of" the Acura.[53]  "The Acura spun out of

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 855.
[50] *Id.*
[51] *Id.*
[52] 190 F.3d 167, 169 (3d Cir. 1999).
[53] *Id.* at 171.

control and collided with two other cars, one of which was propelled into plaintiff, who was standing on the sidewalk, severely injuring him."[54]

The Third Circuit reasoned that "the officers were faced with lawless behavior—the flight from their investigation—for which they were not to blame."[55] "They had done nothing to cause [the Acura driver's] high-speed driving or his flouting of their law-enforcement authority."[56] "Their intent was to do their job as law enforcement officers, not to cause injury."[57] Accordingly, the Third Circuit held that the officers' "actions did not shock the conscience."[58]

Like the officers in *Lewis* and *Davis*, Jenkins did not cause Cole's high-speed driving or flouting of law-enforcement authority. And besides a conclusory allegation that Jenkins's actions "rise to a level of intention to cause harm," Plaintiffs do not allege facts permitting an inference that Jenkins intended to harm Cole.[59] So Jenkins's conduct did not shock the conscience under *Davis* and *Lewis*. At the very least, Jenkins's conduct did not violate clearly-established law.

---

[54] *Id.* at 169.

[55] *Id.* at 171.

[56] *Id.*

[57] *Id.*

[58] *Id.; see also Fagan v. City of Vineland*, 22 F.3d 1296, 1308–09 (3d Cir. 1994) (en banc) ("Therefore, we will affirm the district court's grant of summary judgment for the defendant officers under the 'shocks the conscience' standard.").

[59] Doc. 8 at ¶ 33.

###### b. Level of Culpability

Plaintiffs counter that "the standard to be applied is deliberate indifference" because "Officer Jenkins was able to make an unhurried judgment with time to deliberate, uncomplicated by the pulls of competing obligations . . . ."[60] The Third Circuit addressed this issue in *Sauers v. Borough of Nesquehoning*.[61]

There, an officer observed a vehicle "commit a summary traffic offense . . ."[62] "At some point he took the time to radio ahead to the police in the neighboring borough to request that officers there pull the [vehicle] over when it reached their jurisdiction."[63] Then the officer "decided that catching the [vehicle] himself was important enough to warrant a chase at speeds of over 100 miles-per-hour."[64] Because the officer '"had at least some time to deliberate' before deciding whether and how to pursue the traffic offender," the Third Circuit did not require an intent to harm.[65]

But here, Plaintiffs do not allege that Jenkins had time to deliberate before pursuing Cole.[66]  Nor do Plaintiffs allege facts permitting such an inference.[67]

---

[60]  Doc. 14 at 11.
[61]  905 F.3d at 717–18.
[62]  *Id.* at 715.
[63]  *Id.*
[64]  *Id.*
[65]  *Id.* at 718 (citation omitted).
[66]  Doc. 8.
[67]  *Id.*

Because Jenkins did not have time to deliberate before pursuing Cole, the Court will not apply a deliberate-indifference standard.

Plaintiffs further counter by citing *Dean v. McKinney*.[68]   There, Deputy Sheriff Mckinney "deactivated his emergency lights and siren as required for non-emergency responses."[69]  But more than two minutes after his fellow Deputy Sheriff canceled the emergency response, "McKinney continued to drive at 83 miles per hour—nearly forty miles per hour over the 45-mph speed limit—on a dark, curved road with full knowledge of the risks of night driving under such conditions."[70]  This violated "department policy and state law . . . ."[71]

Eventually, McKinney "lost control of his vehicle and collided with" another vehicle.[72]  The United States Court of Appeals for the Fourth Circuit found that "a reasonable jury could conclude that McKinney deliberately operated his police vehicle in a dangerous and reckless manner with full knowledge of the risks involved."[73]  Accordingly, the Fourth Circuit affirmed the district court's denial of qualified immunity.[74]

---

[68]   976 F.3d 407 (4th Cir. 2020).
[69]   *Id.* at 416.
[70]   *Id.*
[71]   *Id.*
[72]   *Id.* at 417.
[73]   *Id.* at 416.
[74]   *Id.* at 411.

Unlike McKinney, Jenkins drove with his lights and siren on.[75]   Moreover, Jenkins's fellow officers did not cancel the emergency response several minutes "before he lost control of his vehicle and collided . . ."[76]   So *Dean v. McKinney*'s facts are "insufficiently analogous to the facts of this case to have put Officer [Jenkins] on notice of a clearly established right . . ."[77]

In sum, Plaintiffs "have identified neither Supreme Court precedent nor a robust consensus of cases of persuasive authority" demonstrating that Jenkins violated clearly-established law.[78]   The Court could not identify such precedent either.   Accordingly, Plaintiffs' § 1983 claim against Jenkins is dismissed on qualified-immunity grounds.

### 3.   Municipal Liability

Finally, Plaintiffs sue Troy Borough under 42 U.S.C. § 1983.   Third Circuit precedent "requires the district court to review the plaintiffs' municipal liability claims independently of the section 1983 claims against the individual police officers, as the City's liability for a substantive due process violation does not depend upon the liability of any police officer."[79]   Indeed, "a municipality can be

---

[75]   Doc. 8 at ¶ 8 ("At one point decedent turned around on Kittle Road to travel west on Kittle Road, with Defendant Jenkins claiming that he was 20 to 30 yards behind the motorcycle, with lights and siren still activated.").

[76]   *Id.*

[77]   *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010).

[78]   *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (internal quotations marks and citation omitted) (holding that defendants were entitled to qualified immunity at the pleading stage).

[79]   *Kneipp*, 95 F.3d at 1213.

liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution."[80]

### a.    Policy/Custom

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."[81]   "To satisfy the pleading standard, [Plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was."[82]

Here, Plaintiffs allege that Troy Borough employs "policies and/or procedures which recklessly disregard and/or are deliberately indifferent to the safety and constitutional rights of the public relating to the operation of motor vehicles by police officers."[83]   Plaintiffs also allege that Troy Borough engages "in customs and/or practices which recklessly disregard and/or are deliberately indifferent to the safety and constitutional rights of the public relating to the operation of motor vehicles by police officers."[84]   Plaintiffs further allege that Troy Borough's "actions constitute policies and/or practices which evidence a deliberate indifference to

---

[80]   *Fagan v. City of Vineland*, 22 F.3d 1283, 1294 (3d Cir. 1994).
[81]   *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).
[82]   *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).
[83]   Doc. 8 at ¶ 38.
[84]   *Id.*

and/or reckless disregard for the decedent's safety and/or constitutional right to life."[85]

These allegations are conclusory and general.[86] They do not identify a specific policy or custom.  Nor do they specify how this policy or custom injured Cole. Accordingly, Plaintiffs have not sufficiently alleged that Troy Borough's policy or custom injured Cole.[87]

### b.    Deliberate Indifference

Plaintiffs also allege failures to train, supervise, and discipline as well as failures to create, enact, adopt, implement, and enforce policies and standards. These claims all require Troy Borough to be deliberately indifferent.[88]

---

[85]  *Id.* at ¶ 40.

[86]  *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("The District Court dismissed Wood's *Monell* claim because her complaint failed to identify any unlawful policy or custom and failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged. . . . The District Court was correct in finding that Wood's complaint allegations stated the elements of the cause of action and were insufficient."); *see also  McTernan*, 564 F.3d at ("McTernan's complaint simply paraphrases § 1983 . . . .  Accordingly, the District Court properly dismissed McTernan's *Monell* claim against the City and official capacity suit against Defendants Barth, Brenner, and Whitman.").

[87]  *See Brown v. Moore*, No. 20-3600, 2022 WL 1772992, at *2 (3d Cir. June 1, 2022) ("We agree with the District Court's conclusion that Brown did not allege sufficient facts to establish a plausible claim that any injury resulted from the execution of a policy or custom of CEC."); *Lesher v. Zimmerman*, 822 F. App'x 116, 121 (3d Cir. 2020) ("None of these prior incidents show that a School District custom or policy led to Lesher's injuries."); *Rees v. Off. of Child. & Youth*, 473 F. App'x 139, 144 (3d Cir. 2012) ("Furthermore, the Appellant's *Monell* claim against the County fails because the Appellant's complaint fails to allege a specific policy or custom by an OCY policy-maker. After a careful review of each of Appellant's contentions, we affirm the District Court.").

[88]  *See Est. of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability."); *Christopher v. Nestlerode*, 240 F. App'x 481, 490 (3d Cir. 2007) ("Christopher contends Hose and the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same 'deliberate indifference' standard to all three arguments."); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20,

Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is" necessary "to demonstrate deliberate indifference for purposes of failure to train."[89] "A pattern of violations puts . . . decisionmakers on notice that a new program is necessary . . . ."[90] Otherwise, Plaintiffs must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[91]

Here, Plaintiffs allege that Troy Borough "possessed actual and/or constructive notice of Mr. Jenkins' and/or other police officers' prior operation of motor vehicles with reckless disregard and/or deliberate indifference to the safety and/or constitutional rights of others."[92] Plaintiffs also allege that Troy Borough did not "discipline Briar Jenkins for prior operation of a motor vehicle with reckless disregard and/or deliberate indifference to the safety and/or constitutional rights of others."[93]

But Plaintiffs do not detail any prior high-speed chases by Troy Borough officers.[94] Nor do Plaintiffs explain how these prior chases violated the

---

25 (3d Cir. 1997) ("Section 1983 would impose liability for La Penta's inadequate training and discipline only if the Plymouth Police Department was deliberately indifferent to the rights of persons with whom he came in contact.").

[89] *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[90] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).

[91] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

[92] Doc. 8 at ¶ 37.

[93] *Id.* at ¶ 38.

[94] Doc. 8.

Constitution.[95]   Accordingly, Plaintiffs have "not plausibly alleged that the [Borough] was deliberately indifferent to anyone's substantive due process rights."[96]

### c.     Causation

"Causation is a requirement for . . . liability that is separate from deliberate indifference."[97]  Causation involves more than "showing that . . . employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury."[98]  Instead, causation requires that "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect."[99]

Here, Plaintiffs allege that Troy Borough's "actions were the direct and proximate causes of and/or substantial contributing factors to Plaintiffs' damages."[100]  Again, this conclusory allegation does not sufficiently indicate causation.[101]

In sum, Plaintiffs have not plausibly alleged a policy/custom, deliberate indifference, or causation.  So their § 1983 claims against Troy Borough are dismissed.

---

[95] *Id.*

[96] *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) ("We will therefore affirm the dismissal of her *Monell* claim.")

[97] *Thomas*, 749 F.3d at 226.

[98] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991).

[99] *Canton*, 489 U.S. at 391.

[100] Doc. 8 at ¶ 42.

[101] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

## III.   CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted.  The law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[102]  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[103]  A complaint is "futile" if even as amended, it would fail to state a claim upon which relief could be granted.[104]

Here, amending Plaintiffs' state-law negligence claims would be futile because Plaintiffs agree that municipal immunity bars these claims.[105]  Because qualified immunity protects Jenkins, amending Plaintiffs' § 1983 claim against him would also be futile.[106]  Plaintiffs have already amended these claims once, and further leave to amend is not granted.

---

[102]  *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).

[103]  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

[104]  *Id.*

[105]  Doc. 14 at 15.

[106]  *See Wilson v. Altman*, 807 F. App'x 172, 177 (3d Cir. 2020) (affirming denial of leave to amend because plaintiff "cannot offer any factual amendments that would cure the deficiencies in her complaint, where she has failed to allege the violation of any constitutional right and the Insurance Officials are shielded by qualified immunity"); *Tate v. Wiggins*, 805 F. App'x 159, 163–64 (3d Cir. 2020) ("Even assuming that Tate's condition constitutes a serious medical need, we agree that the defendants are entitled to qualified immunity because there is no clearly established right involved here. . . . Finally, amendment of these claims would be futile."); *McCormick v. Kline*, 670 F. App'x 764, 766 (3d Cir. 2016) (holding that "it would be futile to allow leave to amend" when qualified immunity protected a corrections officer); *Gray v. Pagano*, 287 F. App'x 155, 159 (3d Cir. 2008) (affirming denial of leave to amend because "the claim against Sheriff McGinn is . . . protected by qualified immunity").

That leaves Plaintiffs' § 1983 claims against Troy Borough.  Plaintiff will be given fourteen days from today's date to file a Second Amended Complaint as to these municipal-liability claims only.  This Second Amended Complaint should allege facts detailing a specific Troy Borough policy/custom and permitting inferences of deliberate indifference and causation.  If Plaintiffs do not file a Second Amended Complaint, Plaintiffs § 1983 claims against Troy Borough will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge