# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB COLE and JENNIFER CARNWRIGHT HIBBERT, as parents and natural guardians of Levi Cole, deceased, and as Co-Administrators of the Estate of Levi Cole, | No. 4:21-CV-01779 |
| | (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| TROY BOROUGH, | |
| Defendant. | |

## MEMORANDUM OPINION

### DECEMBER 12, 2022

Six months ago, this Court dismissed without prejudice Plaintiffs Jacob Cole and Jennifer Carnwright Hibbert's *Monell* claim against Defendant Troy Borough—their son died in a motorcycle accident during a police pursuit. The Plaintiffs filed their Second Amended Complaint, seeking to remedy their prior pleading deficiencies concerning (a) the Borough's purported reckless indifference in failing to adopt and enforce policies on appropriate police pursuit procedures, and (b) the causal nexus between this failure and the accident that resulted in their son's death. Although the additional allegations sufficiently address the latter, they do not cure the identified deficiencies with the former. Accordingly, the *Monell* claim is again dismissed—this time with prejudice.

## I.     BACKGROUND

### A.     First Amended Complaint

Plaintiffs Jacob Cole and Jennifer Carnwright Hibbert initiated this action in October 2021 and then amended their Complaint three months later.[1] In the Amended Complaint, the Plaintiffs alleged that on September 26, 2020, their son, Levi Cole, died in a motorcycle accident following an extended police pursuit.[2] Specifically, Levi Cole was driving his motorcycle in Troy Borough, Bradford County, Pennsylvania, traveling 57 miles per hour in a 25-miles-per-hour zone, when he was spotted by Troy Borough Police Officer Briar Jenkins.[3] Officer Jenkins, who recognized both the motorcycle and the driver, activated his warning lights and siren and began pursuing Levi Cole.[4] The pursuit continued through Troy Township, Sylvania Borough, and Columbia Township, and into Tioga County.[5] Levi Cole, on his motorcycle, and Officer Jenkins, in his police cruiser, ultimately entered the Borough of Roseville, and there, the two collided, causing Levi Cole to lose control and drive into a tree.[6] Levi Cole died because of the impact and crash.[7]

---

[1]    *See* Doc. 1 (Compl.); Doc. 8 (Am. Compl.).
[2]    Doc. 8 (Am. Compl.) ¶ 8.
[3]    *Id*. ¶¶ 3, 6.
[4]    *Id*. ¶ 7–8.
[5]    *Id*. ¶ 8.
[6]    *Id*.
[7]    *Id*.

The Amended Complaint contained four causes of action: (I) Negligence, against Officer Jenkins; (II) Negligence, against Troy Borough; (III) Civil Rights Violation of 42 U.S.C. § 1983, against Officer Jenkins; and (IV) Civil Rights Violation of 42 U.S.C. § 1983, against Troy Borough.[8] Relevant here, the Plaintiffs premised their § 1983 action against Troy Borough on several theories of liability—specifically, the Borough's (1) adoption and adherence to policies or customs that allegedly contributed the accident; (2) the Borough's failure to adequately train, supervise, and discipline its police officers relating to the operation of motor vehicles; and (3) failure to adopt, implement, or enforce procedures concerning police pursuits.[9]

For the first theory of liability (polices and customs), the Plaintiffs alleged that Troy Borough did the following:

- "employ[ed] policies and/or procedures which recklessly disregard[ed] and/or [were] deliberately indifferent to the safety and constitutional rights of the public relating to the operations of motor vehicles by police officers"; and

- "engag[ed] in customs and/or practices which recklessly disregard[ed] and/or [were] deliberately indifferent to the safety and constitutional rights of the public relating to the operation of motor vehicles by police officers."[10]

---

[8]   *Id.* ¶¶ 17–42. As Levi Cole's parents and the co-administrators of his estate, the Plaintiffs sought recovery under Pennsylvania's Wrongful Death Act, *see* 42 Pa. C.S.A. § 8301, and Survival Act, *see* 42 Pa. C.S.A. § 8302. *Id.* ¶¶ 43–62.

[9]   *Id.* ¶¶ 35–42.

[10]   *Id.* ¶¶ 38(f), (g).

For the second theory of liability (failure to train/supervise), the Plaintiffs alleged that Troy Borough failed to "supervise" or "properly train" Officer Jenkins, and then "fail[ed] to appropriately discipline [Officer Jenkins] for prior operation of a motor vehicle with reckless disregard and/or deliberate indifference to the safety and/or constitutional rights of others."[11] The Plaintiffs did not, however, allege any facts regarding prior high-speed chases involving Officer Jenkins or other Troy Borough police officers.

For the third theory of liability (failure to adopt/enforce), the Plaintiffs alleged that Troy Borough failed to do the following:

- "create, implement and/or enforce policies and procedures relating to the operation of motor vehicles";

- "create, implement and/or enforce policies and procedures relating to responding to calls involving other officers";

- "create, implement and/or enforce policies and procedures relating to responding to calls which should be called off and/or reported to be over";

- "enact, enforce and train officers with regard to police pursuits, specifically failing to discourage pursuit except in the most extreme circumstances"; and

- "enact, enforce and train officers in their responsibility to secure permission before engaging in a pursuit outside of the Borough of Troy and failing to enact, enforce and train officers in their responsibility to disengage a pursuit when the pursuit is for a summary offense and the officer knows the individual being pursued

---

[11]   *Id.* ¶¶ 38(a), (b), (h).

so that the matter could be resolved through the normal police investigative procedures."[12]

Officer Jenkins and Troy Borough moved to dismiss the Amended Complaint on January 21, 2022.[13] This Court granted that motion, dismissing Counts I, II, and III with prejudice, but allowing the Plaintiffs leave to amend Count IV.[14] For Counts I, II, and III, the Court explained that any further amendment to these claims would be futile, as municipal immunity bars the state law negligence claims and qualified immunity shields Officer Jenkins from the § 1983 claim.[15]

Count IV, however, was dismissed without prejudice.[16] The Court explained that for the first theory of liability (policy and custom), the Plaintiffs did not "identify a specific policy or custom" or "specify how this policy or custom injured Cole."[17] For the second and third theories of ability (failure to train/supervise and failure to adopt/enforce, respectively), the Plaintiffs needed to allege that Troy Borough was deliberately indifferent to known or obvious risks of constitutional violations; the Court found the Second Amended Complaint inadequate, explaining that the Plaintiffs did not "detail any prior high-speed chases by Troy Borough

---

[12]   *Id*. ¶¶ 38(c), (d), (e), (i), (j).
[13]   Doc. 9 (Second Mot. to Dismiss).
[14]   Doc. 16 (Order Granting Second Mot. to Dismiss).
[15]   Doc. 15 (Mem. Op. Granting Second Mot. to Dismiss) at 18.
[16]   *Id*. at 19.
[17]   *Id*. at 15.

officers" or "explain how these prior chases violated the Constitution."[18] Further, the Court held that regardless of the theory of liability, the claim failed because the Plaintiffs did not adequately plead causation: they provided only a "conclusory allegation" that did not "sufficiently indicate causation."[19]

In dismissing Count IV, the Court granted the Plaintiffs fourteen days to file a Second Amended Complaint.[20] This Court provided specific instructions on what the Plaintiffs needed to allege to survive dismissal: "This Second Amended Complaint should allege facts detailing a specific Troy Borough policy/custom and permitting inferences of deliberate indifference and causation."[21]

## B.    Second Amended Complaint

As instructed, the Plaintiffs filed their Second Amended Complaint two weeks later.[22] In this, the Plaintiffs incorporated the first 34 paragraphs of their First Amended Complaint by reference,[23] and then provided new allegations supporting its § 1983 claim against Troy Borough.[24]

---

[18]    *Id*. at 16–17.
[19]    *Id*. at 17 (referencing Doc. 8 (Am. Compl.) ¶ 42 ("The above-referenced actions were the direct and proximate causes of and/or substantial contributing factors to Plaintiffs' damages as set forth above.")).
[20]    *Id*. at 19.
[21]    *Id*.
[22]    Doc. 18 (Second Am. Compl.).
[23]    *Id*. at 1. In addition to the factual pleadings about the police pursuit and accident, these allegations include the pleadings for Counts I, II, and III. *See* Doc. 8 (Am. Compl.) ¶¶ 17–34. As discussed, these claims were dismissed with prejudice; the only live claim in this action is Count IV, Civil Rights Violation of 42 U.S.C. § 1983 against Troy Borough.
[24]    Doc. 18 (Second Am. Compl.) ¶¶ 35–48.

The revised allegations contained in the Second Amended Complaint appear to narrow the scope of the claim: the Plaintiffs no longer allege that Troy Borough adopted certain policies or adhered to certain customs that caused their son's accident and death; instead, they predicate this § 1983 claim on the failure to adopt/enforce and the failure to train/supervise theories of liability.[25] For the failure to adopt/enforce, the Plaintiffs allege the following:

- "Troy Borough knew that it was required by even the most basic public safety standards to enact and enforce protocols to govern its police officers in pursuit of law violators with motor vehicles";

- "Troy Borough knew that if it did not enact proper safety procedures, train its officers in those safety procedures and enforce those safety procedures, it was placing citizens at risk for the consequences of an unregulated, dangerous police pursuit"; and

- "[t]he Borough of Troy failed to enact constitutionally required safeguards with regard to public safety in that it had no protocols and no enforcement mechanism with regard to controlling its police employees in their pursuit of lawbreakers."[26]

For the failure train/supervise, the Plaintiffs allege that because Troy Borough did not adopt the policies referenced above, "Troy police officers were provided with no guidance in the safety measures to be complied with in pursuing potential law offenders."[27]

According to the Plaintiffs, Troy Borough's failure to "enact, train, and enforce its police officers in basic safety measures with regard to high-speed

---

[25]   *Id.*

[26]   *Id.* ¶¶ 41–43.

[27]   *Id.* ¶ 44.

pursuits" constitutes "reckless disregard."[28] In support, the Plaintiffs assert that they "believe and, therefore, aver that it is likely there has been a history of such pursuits."[29] The Plaintiffs do not detail any prior high-speed chases involving Troy Borough officers. Indeed, the Plaintiffs acknowledge they "cannot honestly allege that there has been a history of unregulated and dangerous conduct."[30]

On the issue of causation, the Plaintiffs allege the following:

> [T]he failure to Troy Borough with regard to enactment, training, and enforcement resulted in a high-speed pursuit that lasted an extended period of time over miles of country roads, for a minor summary traffic violation when the officer knew who the offender was and had plenty of time to call of his pursuit and deal with the matter in a routine police investigative matter.[31]

The Plaintiffs assert that this "lack of concern for the safety of citizens being pursued by its police officers . . . resulted in the death of [Levi Cole]."[32]

Troy Borough moved to dismiss the Second Amended Complaint on July 21, 2022.[33] That motion has been fully briefed and is now ripe for disposition.[34]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which

---

[28]   *Id*. ¶ 45 (cleaned up).
[29]   *Id*. ¶ 46.
[30]   *Id*.
[31]   *Id*. ¶ 47 (cleaned up).
[32]   *Id*. ¶ 48.
[33]   Doc. 23 (Mot. to Dismiss Second Am. Compl.).
[34]   *See* Doc. 24 (Troy Borough Br.); Doc. 25 (Plaintiffs' Opp.).

relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[35] and *Ashcroft v. Iqbal*,[36] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[37] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[38]

## III.   ANALYSIS

Given this Court's prior dismissal of Count IV, the issue here is straightforward: whether the Plaintiffs, in the Second Amended Complaint, addressed the pleading deficiencies concerning deliberate indifference and causation that necessitated dismissal of the Amended Complaint. Although the Plaintiffs successfully remedied the latter, they failed to adequately address the former.

---

[35]   550 U.S. 544 (2007).
[36]   556 U.S. 662 (2009).
[37]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[38]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations, brackets, and citations omitted).

Preliminarily, the Court finds that the Second Amended Complaint adequately alleges causation. As this Court explained in its prior Memorandum Opinion, "[c]ausation is a requirement for . . . liability that is separate from deliberate indifference."[39] And causation involves more than showing that "employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury."[40] Instead, causation requires that "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect."[41]

Here, the Plaintiffs identify a specific omission in the Troy Borough Police Department's training program: "[t]he failure of Troy Borough to enact, train, and enforce its police officers in basic safety measures with regard to high-speed pursuits."[42] According to the Plaintiffs, a satisfactory policy concerning high-speed pursuits would "dictate that if the officer is aware of the identity of the driver of a pursued motor vehicle and if the incident giving rise to the pursuit is of a summary violation nature, the pursuit should be terminated and the matter dealt with through normal police investigative procedures."[43]

---

[39]   *Thomas v. Cumberland County*, 749 F.3d 217, 226 (3d Cir. 2014).

[40]   *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1030 (3d Cir. 1991).

[41]   *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

[42]   Doc. 18 (Second Am. Compl.) ¶ 45 (cleaned up).

[43]   Doc. 8 (Am. Compl.) ¶ 13 (incorporated by reference in the Plaintiff's Second Amended Complaint, *see* Doc. 18 (Second. Am. Compl.) ¶ 1).

The Plaintiffs allege that Officer Jenkins observed a motorcycle traveling approximately 57 miles per hour in a 25-mile-per-hour zone (i.e., a "summary violation), and that he "recognized the motorcycle and the operator of the motorcycle as Levi Cole."[44] Consistent with the Plaintiffs' pleadings about what a satisfactory policy would require, Officer Jenkins should have terminated the pursuit and dealt with the matter "through normal police investigative procedures."[45] He did not.[46] Accordingly, the Plaintiffs allege that "the failure of Troy Borough with regard to enactment, training, and enforcement resulted in a high-speed pursuit that lasted an extended period of time over miles of country roads, for a minor summary traffic violation when the officer knew who the offender was and had plenty of time to call off his pursuit and deal with the matter in a routine police investigative manner."[47]

Because the Plaintiffs identify a specific failure in Troy Borough's police officer training and policies, and explain how their son's accident and death would have been avoided had Officer Jenkins adhered to policies that were "not deficient in [this] identified respect," they have adequately alleged causation.[48]

That said, the Second Amended Complaint does not remedy the Amended Complaint's pleading deficiencies concerning the second requirement at issue:

---

[44]  *Id*. ¶¶ 6–7.
[45]  *Id*. ¶ 13.
[46]  *Id*. ¶ 8.
[47]  Doc. 18 (Second Am. Compl.) ¶ 47 (cleaned up).
[48]  *Canton*, 489 U.S. at 391.

deliberate indifference. To sustain § 1983 claims against a municipality on the theories of failure to adopt/enforce or failure to train/supervise, a plaintiff must allege facts showing that the municipality was "deliberately indifferent."[49] Deliberate indifference is generally established in one of two ways: (1) "[a] pattern of similar constitutional violations by untrained employees,"[50] or (2) "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[51]

As explained, the Court previously dismissed without prejudice the Plaintiffs' § 1983 claim against Troy Borough because the Amended Complaint did not "detail any prior high-speed chases by Troy Borough officers" or "explain how these prior chases violated the Constitution."[52] Instead, the Amended Complaint contained only generalized allegations that did little more than restate the elements of the offense. Specifically, the Plaintiffs alleged that Troy Borough "possessed actual and/or constructive notice of [Officer] Jenkins' and/or other

---

[49]  *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (3d Cir. 2007) ("Christopher contends Hose and the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same 'deliberate indifference' standard to all three arguments."); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because the fall under the same species of municipal liability."); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("Section 1983 would impose liability for La Penta's inadequate training and discipline only if the Plymouth Police Department was deliberately indifferent to the rights of persons with whom he came in contact.").

[50]  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[51]  *Canton*, 489 U.S. at 390.

[52]  Doc. 15 (Mem. Op. Granting Second Mot. to Dismiss) at 16–17.

police officers' prior operation of motor vehicles with reckless disregard and/or deliberate indifference to the safety and/or constitutional rights of others" and that it did not "discipline [Officer] Jenkins for prior operation of a motor vehicle with reckless disregard and/or deliberate indifference to the safety and/or constitutional rights of others."[53] This Court found these allegations insufficient to establish either a pattern of similar constitutional violations by untrained employees or that the need for more or different training was "so obvious" that Troy Borough's failures constituted deliberate indifference to anyone's substantive due process rights.[54]

In their Second Amended Complaint, the Plaintiffs allege that they "believe and, therefore, aver that it is likely there has been a history of such pursuits given the failure of Troy Borough to enact, train, and enforce safety regulations with regard to high-speed pursuits."[55] They again do not "detail any prior high-speed chases by Troy Borough officers" or "explain how these prior chases violated the Constitution."[56] Indeed, the Plaintiffs admit they lack any knowledge of such prior conduct: "Plaintiffs cannot honestly allege that there has been a history of unrelated and dangerous high pursuits."[57]

---

[53]   Doc. 8 (Am. Compl.) ¶¶ 37–38.
[54]   Doc. 15 (Mem. Op. Granting Second Mot. to Dismiss) at 16–17.
[55]   Doc. 18 (Second Am. Compl.) ¶ 46 (cleaned up).
[56]   Doc. 15 (Mem. Op. Granting Second Mot. to Dismiss) at 16–17.
[57]   Doc. 18 (Second Am. Compl.) ¶ 46.

13

That admission dooms the Plaintiffs' case. As this Court explained in its prior Memorandum Opinion, to survive dismissal the Second Amended Complaint needed to detail prior instances of high-speed chases that resulted in constitutional violations.[58] It lacks this information and instead simply rephrases the generalized allegations restating the elements of the offense and then asks the Court to grant discovery to prove the currently unsubstantiated assumptions.[59] But as Third Circuit precedent makes plain, that is not permissible.[60]

Because the Plaintiffs have not alleged facts establishing either a pattern of similar constitutional violations by untrained employees or that the absence of a relevant policy or training created an obvious risk of constitutional violations, they have not sufficiently pleaded deliberate indifference.[61] And absent that, the § 1983 claim against Troy Borough cannot proceed.

---

[58]   *See* Doc. 15 (Mem. Op. Granting Second Mot. to Dismiss) at 19 ("This Second Amended Complaint should allege facts detailing a specific Troy Borough policy/custom and permitting inferences of deliberate indifference and causation.").

[59]   Doc. 18 (Second Am. Compl.) ¶ 46.

[60]   *See, e.g.*, *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming the District Court's dismissal of the plaintiff's *Monell* claim: "[t]he District Court was correct in finding that [the plaintiff's] complaint allegations stated the elements of the cause of action and were insufficient" because "[s]imply paraphrasing § 1983 does not meet Rule 8's pleading requirements [as] it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability") (internal quotation marks, brackets, and citations omitted); *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("McTernan's complaint simply paraphrases § 1983 . . . . Accordingly, the District Court properly dismissed McTernan's *Monell* claim against the City and official capacity suit against Defendants Barth, Brenner, and Whitman.").

[61]   *See Connick*, 563 U.S. at 62; *Canton*, 489 U.S. at 390.

## IV.    CONCLUSION

By previously dismissing the Plaintiffs' § 1983 claim against Troy Borough without prejudice, the Court granted the Plaintiffs leave to again amend their Complaint and remedy the identified deficiencies. Indeed, this Court identified what the Plaintiffs needed to allege to sustain their claim. They were unable to do so. Regardless, they ask the Court to let their case proceed, asserting that they believe discovery will unearth the required information they currently lack. That is something this Court cannot do. Because the Plaintiffs fail to satisfy their pleading obligations, the § 1983 claim against Troy Borough is dismissed. And as the Plaintiffs effectively concede, further amendment would be futile. This dismissal is therefore with prejudice.[62]

An appropriate Order follows.

BY THE COURT:


<u>s/ Matthew W. Brann</u>
Matthew W. Brann
Chief United States District Judge

---

[62] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.") (citation omitted).